DAVID L. HENKIN  #6876
LEINĀʻALA L. LEY  #9710
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawaiʻi 96813
T: (808) 599-2436
Email: dhenkin@earthjustice.org
    lley@earthjustice.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| CONSERVATION COUNCIL FOR HAWAIʻI and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>v.<br><br>BRE ICONIC GWR OWNER LLC and WALDORF=ASTORIA MANAGEMENT LLC,<br><br>Defendants. | CIVIL NO. 1-22-00054<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Center for Biological Diversity and Conservation Council for Hawai'i (collectively "Plaintiffs") hereby complain of the actions of Defendants BRE Iconic GWR Owner, LLC and Waldorf=Astoria Management, LLC, (collectively "Defendants") as follows:

INTRODUCTION

1. Attraction to bright lights is a major threat to the continued survival and recovery of the Hawaiian petrel (*Pterodroma sandwichensis*), which is endemic to the Hawaiian Islands and protected as an endangered species pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq.

2. During the fledging season (from late September to early December), Hawaiian petrels heading to sea for the first time are drawn to artificial lights, circling them until they fall to the ground from exhaustion or strike human-made structures. Even if uninjured, grounded birds may be unable to take off again and are vulnerable to predation, vehicle collisions, starvation, dehydration, and poaching. Adult birds, which are present on the island of Maui from February through October, are also attracted to lights and suffer injury and death.

3. Plaintiffs are informed and believe, and on the basis thereof allege, that, from January 2008 to December 2021, at least fifteen (15) Hawaiian petrels—an average of one bird each year—were attracted to artificial lights at the Grand

Wailea Resort ("Grand Wailea") on Maui, were grounded due to light attraction, and were subsequently found and recovered.  At least one of these recovered birds was found dead.  Plaintiffs are further informed and believe, and on the basis thereof allege, that other Hawaiian petrels that were never found and recovered have been attracted to artificial lights at the Grand Wailea, resulting in their grounding, and that a higher percentage of the grounded birds that were not found perished.  While there are multiple sources of bright light on Maui, the Grand Wailea's property stands out among all hotels as a high-take zone.

4. Plaintiffs bring this action to protect the Hawaiian petrel by compelling Grand Wailea's compliance with its mandatory duties under the ESA.  Specifically, as described more fully herein, Plaintiffs seek a declaratory judgment that, in the absence of a lawful incidental take permit, Defendants' operation of the Grand Wailea violates the ESA's prohibition on unpermitted "take" of a federally listed species.  Plaintiffs also seek appropriate injunctive relief to protect Hawaiian petrels on Maui from further harm from Defendants' illegal activities.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over the claims for relief in this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States); 16 U.S.C. § 1540(c) (action arising under the ESA); 16 U.S.C. §

1540(g) (citizen suit provisions of the ESA); and 28 U.S.C. §§ 2201-2202 (power to issue declaratory judgments in cases of actual controversy).

6. On September 15, 2021, Plaintiffs served Defendants BRE Iconic GWR Owner, LLC, and Waldorf=Astoria Management, LLC with notice of the violations of law alleged herein, as required by ESA section 11(g)(2)(A), 16 U.S.C. § 1540(g)(2)(A).

7. On September 23, 2021, Plaintiffs served the Secretary of the Interior with notice of the violations of law alleged herein, as also required by ESA section 11(g)(2)(A), 16 U.S.C. § 1540(g)(2)(A).

8. Plaintiffs have formally demanded that Defendants bring the Grand Wailea's operations into compliance with the ESA, but Defendants have failed and refused, and continue to fail and refuse, to do so.  An actual controversy therefore exists between the parties within the meaning of 28 U.S.C. § 2201 (declaratory judgments).

9. Venue lies properly in this judicial district by virtue of 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(b) and (c) because the violations are occurring here, a substantial part of the events or omissions giving rise to the claim occurred here, and Defendants reside here.

## PARTIES

10.     Plaintiff Conservation Council for Hawai'i ("CCH") is a non-profit citizens' organization based in Hawai'i with approximately 5,500 members in Hawai'i, the United States mainland, and foreign countries.  CCH is the Hawai'i affiliate of the National Wildlife Federation, a non-profit membership organization with over 5.8 million members and supporters nationwide.  CCH's mission is to protect native Hawaiian species, including the Hawaiian petrel, and to restore native Hawaiian ecosystems for future generations.

11.     To protect its interests in Hawaiian petrels and the interests of its members and staff, CCH filed lawsuits in 2010 to protect the species from death and injury associated with the activities of the Kaua'i Island Utility Cooperative ("KIUC") and the St. Regis Princeville Resort, including, but not limited to, harm associated with attraction to bright lights at facilities owned and operated by those defendants.  CCH's lawsuit against KIUC resulted in KIUC securing incidental take permit coverage for its harmful activities, while CCH's lawsuit against St. Regis culminated in a settlement pursuant to which the resort implemented measures to reduce seabird attraction, committed to secure incidental take permit coverage, and made monthly contributions to fund projects to benefit the imperiled seabirds.  The St. Regis has since obtained incidental take permit coverage.

12. Since 2017, CCH also has been involved in efforts, including litigation, to protect Hawaiian petrels and other ESA-listed seabirds from harm associated with the bright lights at the State of Hawai'i Department of Transportation's ("HDOT") harbors and airports on Maui, Lāna'i, and Kaua'i. HDOT recently obtained incidental take permit coverage for take of imperiled seabirds, including Hawaiian petrels, at its Kaua'i facilities, and modified its lighting so as to minimize take.

13. Most recently, in 2019, CCH filed a lawsuit against the County of Maui for implementing a project to replace high pressure sodium streetlights with light-emitting diode ("LED") fixtures without first analyzing the impacts of the LED lights on threatened and endangered wildlife, including the Hawaiian petrel, as required by the Hawai'i Environmental Policy Act, Hawai'i Revised Statutes chapter 343. As a result of this lawsuit, CCH secured an injunction halting the replacement project pending the County's review of the environmental effects of LED lights on imperiled wildlife, and consideration of less harmful alternatives. The County also agreed to dim the LED streetlights that were installed before the lawsuit was filed so as to minimize harm to wildlife, including Hawaiian petrels.

14. In addition to undertaking litigation to protect Hawaiian petrels from injury and death, CCH and its members frequently advocate for management activities that protect and rehabilitate Hawaiian petrel breeding habitat necessary

for the successful survival and recovery of the species. For example, CCH was involved in the creation of two Natural Area Reserves that protect Hawaiian petrel breeding and nesting habitat from predators and invasive species: Hono o Nā Pali on Kauaʻi and Nakula on Maui. CCH and its members also regularly advocate for increased efforts to remove and exclude feral sheep, goats, deer, and pigs from suitable habitat on state lands, as feral ungulates eat seabird eggs and chicks and destroy the native vegetation that imperiled seabirds need to establish their nesting colonies. Similarly, CCH and its members advocate for increased funding and management activities to remove alien vegetation that endangers native Hawaiian ecosystems that Hawaiian petrels use for breeding and nesting activities.

15. To increase public support for wildlife protection and habitat restoration, CCH also conducts educational programs about Hawaiʻi's imperiled wildlife. For example, as part of their Manu Kai (Seabird) Campaign, CCH educates children about Hawaiʻi's seabirds – including the Hawaiian petrel – and the many threats that they face.

16. CCH members include wildlife biologists, Native Hawaiian cultural practitioners, fishers, educators, artists, community leaders and others who study, observe, photograph, research, and enjoy the Hawaiian petrel in the wild on a regular and ongoing basis. CCH members who live outside of Hawaiʻi visit the islands to observe and enjoy Hawaiʻi's native wildlife, including Hawaiian petrels.

CCH's members and staff derive scientific, cultural, recreational, conservation, and aesthetic benefits from the existence of these animals in the wild. CCH brings this action on behalf of itself and its adversely affected members and staff.

17. Plaintiff Center for Biological Diversity ("the Center") is a non-profit environmental organization founded in 1989, dedicated to the protection of native species and their habitats through science, policy, and environmental law. The Center is incorporated in California and headquartered in Tucson, Arizona, with field offices throughout the United States and Mexico, including in Honolulu, Hawai'i. The Center has more than 89,610 members (including members who reside in Hawai'i) and online activists dedicated to the protection and restoration of endangered species and wild places.

18. To protect its interests in Hawaiian petrels and the interests of its members and staff, the Center joined with CCH to file lawsuits in 2010 to protect the species from death and injury associated with the activities of KIUC and the St. Regis Princeville Resort, as described above. KIUC and the St. Regis both subsequently modified their lights and obtained incidental take permit coverage.

19. In 2016, the Center sent a notice of intent to sue the Kōke'e Air Force Station on Kaua'i after its lighting killed more than a dozen endangered seabirds, including Hawaiian petrels. To avoid future incidents, base managers agreed to operate under nearly totally dark conditions moving forward.

20. Since 2017, the Center has partnered with CCH in efforts, including litigation, to protect Hawaiian petrels from harm associated with the bright lights at HDOT harbors and airports on Maui, Lānaʻi, and Kauaʻi, as described above.

21. The Center's members and staff regularly spend time on Maui for seabird observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities. The Center's members and staff have researched, studied, visited, observed, or attempted to observe, photographed, or attempted to photograph, and sought protection for Hawaiian petrels on Maui. The Center's members and staff intend to continue to research, study, visit, observe, photograph, and seek protection for these species in the future. The Center's members and staff derive scientific, recreational, conservation, and aesthetic benefits from the existence of these animals in the wild. The Center brings this action on behalf of itself and its adversely affected members and staff.

22. The above-described scientific, cultural, recreational, conservation, educational, and aesthetic interests of Plaintiffs and their respective members, have been, are being, and, unless the relief prayed herein is granted, will continue to be adversely affected and irreparably injured by Defendants' continued refusal to comply with their obligations under the ESA, as is more fully set forth below. The individual interests of the Plaintiffs' members as well as their organizational interests are thus directly and adversely affected by Defendants' unlawful actions.

23. Plaintiffs are informed and believe, and on the basis thereof allege, that Defendant BRE Iconic GWR Owner, LLC is a limited liability company incorporated in Delaware that has control over or is otherwise responsible for the operations of the Grand Wailea, including the resort's use of bright lights that attract and take ESA-listed seabirds.

24. Plaintiffs are informed and believe, and on the basis thereof allege, that Defendant Waldorf=Astoria Management, LLC, is a limited liability company incorporated in Delaware that has control over or is otherwise responsible for the operations of the Grand Wailea, including the resort's use of bright lights that attract and take ESA-listed seabirds.

## LEGAL FRAMEWORK

25. "[T]he Endangered Species Act of 1973 represented the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Authority v. Hill, 437 U.S. 153, 180 (1978). In furtherance of Congress' goal to conserve species, the ESA generally prohibits the "take" of any species listed as endangered. 16 U.S.C. § 1538(a)(1)(B).

26. The ESA's prohibition on "take" includes actions that "harass," "harm" and "kill" protected species. 16 U.S.C. § 1532(19). The ESA's regulations define "harass" as "an intentional or negligent act or omission which

9

creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3. "Harm" is defined as "an act which actually kills or injures wildlife." Id.

27. To comply with the ESA, Defendants may not "take" any endangered Hawaiian petrel in the course of their operations unless Defendants first obtain and comply with the terms of an incidental take permit in accordance with ESA section 10(a), 16 U.S.C. § 1539(a).

28. The U.S. Fish and Wildlife Service may not issue an incidental take permit unless it first concludes that a permit applicant's activities will not "appreciably reduce the likelihood of the survival and recovery of [any endangered or threatened] species in the wild." 16 U.S.C. § 1539(a)(2)(B)(iv).

29. The ESA further conditions the issuance of an incidental take permit on the applicant developing and committing to implement a habitat conservation plan ("HCP") that, among other things, minimizes and mitigates the impacts of any incidental take of endangered species to the maximum extent practicable. Id. § 1539(a)(2)(A)(ii), (B)(ii).

BACKGROUND FACTS

Hawaiian Petrels



Photo: Daniel Webster

30.     The Hawaiian petrel is an endemic Hawaiian seabird that forages widely across the central, northern, and eastern Pacific Ocean for squid, fish, and crustaceans.  Hawaiian petrels were listed as an endangered species in 1967.[1]

31.     Satellite-tagged petrels have been tracked traveling more than 10,000 kilometers on a single foraging trip to and from their breeding colonies in the main Hawaiian Islands.  During nesting season, when Hawaiian petrels return to Hawai'i to mate and lay eggs, young adults can be heard making a distinctive, nocturnal "oo-ah-oo" call as they ride along coastal updrafts, which is the origin of their name in Hawaiian:  'Ua'u.

---

[1] At the time of listing, the species was known as the Hawaiian dark-rumped petrel (*Pterodroma phaeopygia sandwichensis*).  See 50 C.F.R. § 17.11.

11

32. The largest Hawaiian petrel breeding colonies are located on Maui, in Haleakalā crater, and on Lānaʻi, across the ʻAuʻau Channel from the Grand Wailea. Hawaiian petrels also have smaller remnant breeding colonies on Hawaiʻi Island and on Kauaʻi, and possibly also on Oʻahu and Molokaʻi.

33. On Hawaiʻi Island and Maui, where the soil is dry and vegetation is scarce, Hawaiian petrels nest in cavities in the volcanic terrain, such as cracked lava tubes and crevices. On Kauaʻi and Lānaʻi, Hawaiian petrels nest within the valleys and uplands, where the birds excavate burrows beneath dense vegetation along valley headwalls, favoring steep slopes covered with uluhe fern.

34. Hawaiian petrels have a low reproductive rate. They do not breed until five or six years of age, and may not breed every year once mature.

35. On Maui, Hawaiian petrels begin arriving on breeding grounds to pair in mid-February. Each pair produces only one egg per year, and egg-laying generally occurs in April and May.

36. Hawaiian petrel chicks hatch in July and August. Male and female parents share in both the incubation of their egg and the feeding of their chick. After a chick hatches, its parents briefly stay and protect the chick before beginning a routine of extended ocean foraging and feeding. After approximately 90 to 120 days, the parents will abandon their young, around September or October of each year, and leave the nesting colony until the next breeding season.

37. By December, adult and successful fledging birds have departed the Hawaiian Islands. Once the chicks leave, they will not return to land for up to six years, when they return to prospect for nests.

38. There are currently only an estimated 4,000-5,000 breeding pairs of Hawaiian petrels on Maui, but overall population trends are inconclusive, and updated global population estimates do not currently exist for the species.

39. The number of Hawaiian petrels on Kauaʻi was estimated at approximately 5,000 breeding pairs in the mid-1990's, but, in the years since, human-caused threats to the species have contributed to the precipitous decline in the population on Kauaʻi (a reduction of an estimated seventy-eight percent (78%).

40. Protection of known breeding colonies, and island-specific metapopulations, is critical to the survival of the species.

The Grand Wailea's Operations "Take" Listed Seabirds

41. Plaintiffs are informed and believe, and on the basis thereof allege, that bright lights at the Grand Wailea attract Hawaiian petrels, disorienting the birds and causing them to circle the lights until they fall to the ground from exhaustion or strike buildings or other features on the property.

42. Once Hawaiian petrels are grounded by light attraction, they have very limited ability to resume flight. Thus, grounded birds are vulnerable to injury and death by predation, starvation, dehydration, vehicle collisions and poaching.

43. Beginning in 2008, an average of one (1) grounded Hawaiian petrel has been found on the Grand Wailea's property each year and recovered by the Maui Nui Seabird Recovery Project ("MNSRP"). Specifically, MNSRP has recovered fifteen birds (15) from the Grand Wailea's property over the past fourteen (14) years, with one bird recovered dead. Most recently, MNSRP recovered a grounded Hawaiian petrel from the Grand Wailea on October 29, 2021, during the 2021 fledging season.

44. Plaintiffs are informed and believe, and on the basis thereof allege, that the MNSRP data reflect only the tip of the iceberg with respect to the harm that the Grand Wailea inflicts on endangered Hawaiian petrels. Data shows that people who are not seabird experts, such as hotel staff and guests, rarely discover grounded seabirds. Moreover, birds may crash into the nearby ocean or thick vegetation and not be recovered, in which case they likely perish. Finally, grounded seabirds that are eaten by on-site predators such as cats and mongoose prior to discovery are likewise excluded from MNSRP data documenting recovery of grounded seabirds that are discovered at the Grand Wailea.

45. Plaintiffs are further informed and believe, and on the basis thereof allege, that the Hawaiian petrels that are grounded by Grand Wailea's lights but are not discovered and recovered likely perish.

46. Defendants lack an incidental take permit for the take of Hawaiian petrels associated with their operations at the Grand Wailea. In the absence of a valid incidental take permit, each endangered Hawaiian petrel that is killed, injured, or otherwise "taken" by Defendants' operations constitutes an independent violation of ESA section 9, 16 U.S.C. § 1538.

47. As the MNSRP data make clear, Defendants illegally take listed seabirds on a regular basis, and this illegal take continued into the 2021 fledging season, when a grounded fledgling was discovered on the Grand Wailea property near the fountain area depicted below.



Photo: TripAdvisor

48. Among the lighting fixtures used at the Grand Wailea that are particularly harmful to seabirds are unshielded spotlights, mercury vapor and metal halide lights, lighting in large pools, and beachfront tree and path lights. Moreover, coastal lights like those at the Grand Wailea cause more fallout than

15

inland lights, meaning these lights are particularly dangerous for imperiled seabirds.

49. Defendants are aware that the Grand Wailea's operations harm and kill endangered Hawaiian petrels. As early as 2010, MNSRP, in conjunction with enforcement agents from the U.S. Fish and Wildlife Service, conducted outreach to the Grand Wailea to encourage the resort to obtain an incidental take permit. Further, on September 15, 2021, Defendants received Plaintiffs' notice of intent to sue letter, which provided the data from MNSRP regarding unpermitted take of Hawaiian petrels due to operation of lights at the Grand Wailea.

50. In the absence of a valid incidental take permit, Defendants have been violating, and continue to violate, the ESA.

CLAIM FOR RELIEF

(VIOLATION OF ESA PROHIBITION ON UNAUTHORIZED TAKE)

51. Plaintiffs reallege and incorporate by this reference the preceding paragraphs of this Complaint.

52. Defendants' operations have "taken" and will continue to "take" endangered Hawaiian petrels without incidental take permit coverage. This unauthorized "take" has violated and is violating the ESA, 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. § 17.21.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Enter a declaratory judgment that Defendants have violated and are violating the Endangered Species Act by taking listed species without incidental take authorization;

2. Issue appropriate injunctive relief;

3. Award Plaintiffs the costs of this litigation, including reasonable attorney's fees; and

4. Provide such other relief as may be just and proper.

DATED:   Honolulu, Hawaiʻi, February 7, 2022.

Respectfully submitted,

/s/ Leināʻala L. Ley
DAVID L. HENKIN
LEINĀʻALA L. LEY
EARTHJUSTICE

Attorneys for Plaintiffs
Conservation Council for Hawaiʻi
and Center for Biological Diversity